No. 23-40629

# In the United States Court of Appeals For the Fifth Circuit

BURNETT SPECIALISTS, STAFF FORCE, D/B/A STAFF FORCE
PERSONNEL SERVICES, ALLEGIANCE STAFFING
CORPORATION; LINK STAFFING; LEADINGEDGE PERSONNEL,
LIMITED,

*Plaintiffs-Appellants,*

v.

WILLIAM B. COWEN, IN HIS OFFICIAL CAPACITY, UNITED
STATES OF AMERICA; NATIONAL LABOR RELATIONS BOARD

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Texas

**PETITION FOR REHEARING EN BANC**

ROBERT HENNEKE
CHANCE WELDON
MATTHEW MILLER
CLAYTON WAY CALVIN
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, TX 78701
(512) 472-2700

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-40629; Burnett Specialists, et al. v. Cowen, et al.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants and Counsel | Defendants-Appellees and Counsel |
|---|---|
| • Burnett Specialists<br>• Staff Force, Inc., d/b/a Staff Force Personnel Services<br>• Allegiance Staffing Corp.<br>• Link Staffing<br>• LeadingEdge Personnel, Ltd.<br>• Robert Henneke<br>• Chance Weldon<br>• Matthew Miller<br>• Clayton Way Calvin<br>• Texas Public Policy Foundation | • William B. Cowen<br>• National Labor Relations Board<br>• United States of America<br>• Adrian Garcia<br>• Aaron Samsel<br>• Michael Samuel Dale<br>• Tyler Wiese<br>• Daniel Aguilar<br>• Kwame Samuda |

*/s/ Matthew Miller*

MATTHEW MILLER

*Attorney of Record for Plaintiffs-Appellants*

## STATEMENT REGARDING THE NECESSITY OF EN BANC REHEARING

This appeal involves a panel split on questions of exceptional importance relating to parties' standing to challenge government regulation of their businesses.

*Contender Farms, L.L.P. v. U.S. Dep't of Agriculture*, 779 F.3d 258 (5th Cir. 2015) has been cited 25 times by this Court, and another 61 times within this Circuit. According to LexisNexis, *only one* case conflicts with it, drawing a yellow "caution" flag. That is the Panel Decision. In *Contender Farms*, this Court laid out a straightforward test for standing in Administrative Procedure Act (APA) challenges. If a party is the object of the regulation, then he generally has standing to challenge it. He need not await enforcement. The "increased regulatory burden" of forced compliance is enough. *Id.* at 266.

This is doubly true in the First Amendment context. In *Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020), this Court reaffirmed its long-standing position that a plaintiff need not be currently violating the law to challenge a restriction that chills his speech. It is enough that he merely be refraining from speech in which he has a general intention to engage.

Here, Appellants challenged new federal guidance that prohibited them from speaking to their employees about unionization on paid time. There is no dispute that Appellants have engaged in this activity in the past and would continue to do so but for the new federal prohibition. Nor is there any dispute that the government is currently enforcing the challenged prohibition against similar employers. Indeed, the government admits to dozens of ongoing enforcement actions. Under *Contender Farms* and *Speech First*, this ongoing restriction of Appellants' speech rights would ordinarily be sufficient to establish standing, particularly at the motion-to-dismiss stage.

Nevertheless, the Panel held that Appellants lacked standing to challenge this ongoing restriction on their right to speak. Brushing aside the guidance of *Contender Farms* and its progeny, the Panel concluded that it was not sufficient that Appellants are subject to the regulation and had to change their business practices. It held that Appellants were also required to establish evidence—at the motion-to-dismiss stage—of a specific intention to engage in the prohibited speech, and evidence that they *would* be prosecuted.

This demand for evidence at the motion-to-dismiss stage (1) conflicts with traditional practice under F.R.A.P. 12(b)(6); (2) flatly contradicts *Contender Farms* and *Speech First*; and (3) adds confusion in an area of law where this Court has been commendably clear.

In place of *Contender Farms*' bright-line "object of the regulation" test, the Panel now invites courts and litigants to guess—at the motion-to-dismiss stage—how "actual" a threat of prosecution would be if the plaintiff were to willingly violate the law.

This sort of drastic departure from prior panel decisions warrants review. If this Court is to abandon its long-standing clarity on these issues in favor the multi-factor *ad hoc* approach adopted in this case, that decision should be made by the full Court *en banc*.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

STATEMENT REGARDING THE NECESSITY OF EN BANC REHEARING..........................................................................iii

TABLE OF AUTHORITIES....................................................................vii

ISSUES MERITING EN BANC CONSIDERATION................................1

COURSE OF PROCEEDINGS AND DISPOSITION................................2

FACTS ......................................................................................................2

ARGUMENT .............................................................................................6

I.    The Circuit should rehear the case en banc because the Panel Decision contradicts major prior panel decisions of this Court. ..............................................................................................6

A.    The Panel Decision conflicts with *Contender Farms* and at least five subsequent decisions..................................................6

1.    The Panel Decision adds a "likelihood" element not found in *Contender Farms*..............................................................8

2.    The Panel Decision adds a "third party" analysis not found in *Contender Farms.* ....................................................10

B.    The Panel Decision conflicts with *Speech First*. .......................13

II.    The Circuit should rehear the Panel's decision en banc because it involves an issue of exceptional importance.............16

CONCLUSION .......................................................................................18

CERTIFICATE OF SERVICE.................................................................19

CERTIFICATE OF COMPLIANCE........................................................19

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. City of Brownsville,*
 874 F.3d 898 (5th Cir. 2017) ............................................................. 17

*Braidwood Mgmt. v. EEOC,*
 70 F.4th 914 (5th Cir. 2023) ............................................................ 13

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.,*
 98 F.4th 220 (5th Cir. 2024) ............................................................ 12

*Contender Farms, L.L.P. v. U.S. Dep't of Agriculture,*
 779 F.3d 258 (5th Cir. 2015) ..................................................... passim

*Hernandez v. Mesa,*
 885 F.3d 811 (5th Cir. 2018) ............................................................ 17

*Inst. for Free Speech v. Johnson,*
 No. 24-50712, slip op. at 13 (5th Cir. filed July 28, 2025) .......... 14, 15

*Mance v. Sessions,*
 896 F.3d 390 (5th Cir. 2018) ............................................................ 17

*Melton v. Phillips,*
 875 F.3d 256 (5th Cir. 2017) ............................................................ 16

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
 107 F.4th 415 (5th Cir. 2024) ..................................................... 11, 12

*NetChoice, LLC v. Fitch,*
 134 F.4th 799 (5th Cir. 2025) .......................................................... 13

*Speech First v. Fenves,*
 979 F.3d 319 (5th Cir. 2020) ............................................. iii, 13, 14, 15

*Tex. Med. Ass'n v. HHS,*
 110 F.4th 762 (5th Cir. 2024) .......................................................... 12

*United States v. Perez-Gallan,*
    125 F.4th 204 (5th Cir. 2024) .............................................................. 6

## Rules

Fed. R. App. P. 12(b)(6) ............................................................................. v

Fed. R. App. P. 40(2)(D) ......................................................................... 16

## ISSUES MERITING EN BANC CONSIDERATION

1. Does a party whose business practices are unquestionably restricted by a new federal regulation have standing to challenge that regulation, as this Court held in *Contender Farms* and its progeny, or is an additional evidentiary showing required at the motion-to-dismiss stage?

2. When a federal regulation restricts a party's speech on its face, federal enforcement is ongoing against similar parties, and the party therefore claims that his speech is chilled, should any further evidentiary showing be necessary to establish standing at the motion-to-dismiss stage?

## COURSE OF PROCEEDINGS AND DISPOSITION

Plaintiff-Appellants filed claims in the district court, challenging the constitutional validity of restrictions on their ability to communicate truthful information about unionization to their employees.  ROA.11-20. Defendant-Appellees filed a motion to dismiss pursuant to F.R.A.P. 12(b)(1).  ROA.171-209. (While the motion to dismiss was pending, the parties both also filed motions for summary judgment. *See* ROA.325-428, 449-532, 536-85, 645-99, 745-69.) The district court entered a final judgment granting the motion to dismiss and holding the court was "not the appropriate forum to adjudicate Plaintiffs' First Amendment claims." ROA.794.  Appellants timely appealed. After briefing and oral argument, the Panel affirmed the district court's dismissal. Dkt. 103.

## FACTS

For over 75 years, employers were able to speak with their employees about the merits of unionization on company time and on the company dime. ROA.334. That abruptly changed in 2022.

In April of that year, the National Labor Relations Board's (NLRB) General Counsel issued Memorandum GC 22-04, *The Right to Refrain from Captive Audience and other Mandatory Meetings* (the

"Memorandum"). *See* ROA.22-24. The three-page Memorandum announced a new enforcement policy. Specifically, the memorandum announced that the General Counsel believed that "mandatory meetings" on paid time where employers discuss unionization attempts were *per se* "unlawful," and that the General Counsel would take action in accord with this new interpretation. ROA.354, 356.

The General Counsel made good on her promise. By April of 2023, there were "more than two dozen cases pending at various post-complaint stages" where she had taken the position outlined in the Memorandum, ROA.611, and she had announced that regional offices were "authorized to proceed" bringing complaints consistent with the Memorandum, ROA.602, 652.

Since that time, the NLRB has adopted the General Counsel's approach, making the Memorandum effectively the law of the land. Dkt. 103, at 5. As we sit here today, there is no dispute that if an employer has mandatory meetings to discuss unionization on paid time, it is subject to prosecution under the NLRA. *Id.*

3

Appellants—who own companies subject to this prohibition and who have previously held meetings on paid time[1]—filed suit. Appellants alleged that this new prohibition on speaking to their employees violated their First Amendment rights.

Without discovery, the district court (and later, a panel of this Court) dismissed Appellants' claims for failing to establish standing. The Panel did not dispute that the prohibition applied to Appellants on its face, that Appellants had previously engaged in the prohibited activity and claimed an intent to do so in the future, or that the federal defendants were currently prosecuting dozens of similar companies under the challenged policy.

Instead, the Panel concluded that, despite all this, there was "no credible threat of enforcement of the policies espoused in the Memorandum" because Appellants' intent to engage in the targeted

---

[1]    For example, when an electricians' union attempted to unionize hundreds of Appellant Burnett Specialists' employees, the company simply shared factual information about the union. ROA.16. This factual information was sufficient to rebuff the unionization attempt. There is no dispute that such meetings—if conducted today—would violate the General Counsel's interpretation of the NLRA. ROA.16.

speech was not sufficiently "actual[]," but rather conditioned upon employees' attempt to unionize. Dkt. 103, at 9-11.

The Panel similarly found that even in the context of speech chilling, Appellants' intent to engage in the targeted speech was not sufficiently "actual[]." *Id.* at 11. According to the Panel, this meant Appellants had "not alleged a plausible set of facts establishing that they can meet the first requirement to prove chilled speech" under *Speech First* and ensuing cases. Dkt. 103, at 11-12. For the same reason, the Panel found Appellants had not met the remaining factors. *Id.*

The Panel noted *Contender Farms*' holding that "[i]f a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." 779 F.3d at 264 (quotation omitted). *See* Dkt. 103, at 12-14. However, it found Appellants were not the "object of the regulation" because in its view, "there [was] no evidence that they intend[ed] to take any action arguably related to the Memorandum." *Id.* at 14. The Panel therefore found that insufficient evidence of actuality in Appellants' intended conduct was central to their lack of standing.

# ARGUMENT

**I.    The Circuit should rehear the case en banc because the Panel Decision contradicts major prior panel decisions of this Court.**

The Panel Decision directly conflicts with Fifth Circuit panel decisions in *Contender Farms* and *Speech First*. Not only have those decisions remained undisturbed by both this Court en banc and by the Supreme Court, but multiple significant panel decisions have since affirmed their holdings. The Panel Decision also conflicts with those cases.

"It is well-settled in the Fifth Circuit that, even if a panel's interpretation of the law appears flawed, one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or our en banc court." *United States v. Perez-Gallan*, 125 F.4th 204, 209 (5th Cir. 2024) (quotations omitted). "This rule is strict and rigidly applied." *Id.* This Court should rehear this case en banc to resolve these conflicts.

### A.    The Panel Decision conflicts with *Contender Farms* and at least five subsequent decisions.

*Contender Farms*, with which the Panel Decision conflicts directly, has rapidly become a highly influential opinion of this Court, establishing

that where a private plaintiff "is an object of the regulation there is ordinarily little question that the [government] action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." 779 F.3d at 264 (quotation omitted). Indeed, of 93 cases citing *Contender Farms*, the Panel Decision is the only one to be awarded a yellow "caution" flag on LexisNexis, where it is single-handedly responsible for the case's "At Risk" status.[2]

In *Contender Farms*, a horse farm challenged a USDA regulation requiring mandatory suspension for an abusive practice called "horse

---



*Shepard's Report for Contender Farms*, LexisNexis, https://tinyurl.com/mr29evh3 (last visited August 1, 2025).

soring." *Id.* at 262. Rather than enforce the regulation itself, USDA required private Horse Industry Organizations ("HIOs") to adopt and enforce the suspension policy. *Id.* HIOs administered and trained inspectors for horse competitions, and all competitors were required to agree to be bound by their policies. *Id.* at 262-63. Before the challenged regulation, competitors had been free to choose among HIOs according to their policies, including those on soring. *Id.* at 263. This Court found that because the "suspension[s] target[ed] *participants* in" horse competitions, the horse farm and its owner were just "as much objects of the Regulation as the HIOs themselves." *Id.* at 265.

### 1. The Panel Decision adds a "likelihood" element not found in *Contender Farms.*

In conflict with *Contender Farms*, the Panel here introduced a new element to the analysis: likelihood of enforcement. The Panel found it was "not *sufficiently likely* that [Appellants] ever will be the object of" the Memorandum because "there [was] no[] evidence that [Appellants] intend[ed] to take any action arguably related to" it. Dkt. 103, at 14 (emphasis added). It is notable the Panel Decision completely omits that Appellants *did* plead likelihood. Namely, they affirmed they *had* engaged in the prohibited speech in the past, and that they were likely to do so in

8

the future. ROA.16. Nonetheless, the decision's reasoning directly conflicts with that of *Contender Farms*.

The *Contender Farms* plaintiffs themselves "purportedly [did] not" sore horses, nor did they aver that they ever intended to do so. 779 F.3d at 266. The pleadings there, in other words, evinced even *less* intention to engage in the prohibited conduct than Appellants' pleadings here. That opinion included no discussion of likelihood or actuality—the plaintiffs were "objects of the Regulation" merely because they generally "participate[d] in the type of events that the Regulation [sought] to regulate." *Id.* at 266.

Based on its new "likelihood" element, the Panel then found Appellants lacked standing. Dkt. 103, at 8-11. It found that Appellants' "conditional statement" that they would speak to their employees if the employees attempted to unionize "fail[ed] to support a credible threat of enforcement against" them. *Id.* at 10. This creates an irreconcilable conflict with *Contender Farms*.

Again, *Contender Farms* plaintiffs did even *less* than assert a conditional statement about horse soring. They asserted nothing at all about horse soring in the future, and presumably intended *never* to

engage in that illegal practice. And, unlike Appellants, they "purportedly [had] not" engaged in the targeted activity in the past. *Compare Contender Farms*, 779 F.3d at 266 *with* ROA.16.

### 2. The Panel Decision adds a "third party" analysis not found in *Contender Farms*.

The Panel Decision conflicts with *Contender Farms* in a second way, namely, the Panel's contention that Appellants lack standing because "future enforcement would depend upon a third party." Dkt. 103, at 10-11. The Panel expressed concern about an "attenuated chain of possibilities". *Id.* at 9. But the chain in this case is actually less attenuated than the chain in *Contender Farms*. Here, a unionization attempt must occur, Appellants must manifest their stated intention of speaking to their employees about it, and an employee must file a complaint in response to it—all fairly predictable occurrences in Appellants' line of work.

Subjecting the *Contender Farms* plaintiffs to the same logic, they would have had to sore horses (which they never did or intended to do), then decide to participate in a horse competition (which they were free to abstain from doing), then an inspector would have needed to inspect the horses, and the HIO would have needed to impose a penalty. But the

Court did not discuss "attenuat[ion]" at all; it only required one thing: an "increased regulatory burden." *Contender Farms*, 779 F.3d at 266.

The Panel's reasoning "overlooks the practical impact" and the "level of interference" of the government action. *Id.* at 265. Just as the *Contender Farms* plaintiffs had to "take additional measures to avoid even the appearance of soring," Appellants now must avoid any speech that might prompt a complaint. *Id.* at 266. *See also Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 426-27 (5th Cir. 2024) (finding that Horsemen had a cognizable injury because "[p]ursuant to the [statute], they have already had to agree 'to be subject to and comply with [Authority's] rules, standards, and procedures'— including rules requiring they cooperate with investigations") (quoting *Contender Farms*, 779 F.3d at 264-65).

———————

In sum, the Panel Decision conflicts with *Contender Farms* in two fundamental ways: its conditionality analysis, and its emphasis on impact of the actions of third parties. However, this Circuit has consistently held a mere "increased regulatory burden typically" suffices. *Contender Farms*, 779 F.3d at 266. This is especially true when the

11

government has announced an interpretation and already begun prosecution under it. *See* ROA.611-12.

It is noteworthy that the Panel Decision also conflicts with at least five subsequent cases that directly rely on *Contender Farms*' standing analysis. *See, e.g., Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024) ("An increased regulatory burden typically satisfies the injury in fact requirement… [T]he challenged provisions of the Rule impose an immediate increase in regulatory burden on the plaintiffs… [T]he new Rule requires at least some degree of preparatory analysis, staff training, and reviews of existing compliance protocols… These are precisely the types of concrete injuries that this court has consistently deemed adequate to provide standing in regulatory challenges.") (quotations omitted); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 426-27 (5th Cir. 2024) ("When a regulated entity raises 'a purely legal challenge' like this one, 'it is unnecessary to wait for the Regulation to be applied in order to determine its legality.'") (quoting *Contender Farms*, 779 F.3d at 267) ;*id.* ("Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law.")

(quotation omitted); *Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 773 (5th Cir. 2024) ("the fact that the Plaintiffs are now subject to regulations that are contrary to law is itself a concrete injury sufficient to give them standing"); *NetChoice, LLC v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025) ("the Supreme Court has recognized that [when] the law is aimed directly at plaintiffs, who… will have to take significant and costly compliance measures or risk criminal prosecution… [t]his alone is sufficient") (quotations omitted) (citing *Contender Farms*, 779 F.3d at 266); *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 924, 928 (5th Cir. 2023) ("even a public announcement to enforce a statute and one prior proceeding are sufficient for standing… [even where] plaintiffs do not allege that they are aware of any applicants or current employees engaged in '[covered] behavior' or that they have taken any adverse employment action").

### B.    The Panel Decision conflicts with *Speech First.*

The conflicts created by the Panel Decision do not end at *Contender Farms*. The Opinion also conflicts with this Court's decision in *Speech First*. There, the Court held that a "plaintiff has suffered an injury in fact if he (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is

13

arguably… proscribed by the [policy in question], and (3) the threat of future enforcement of the [challenged policies] is substantial." *Id.* at 330 (quotations omitted). Members of the plaintiff speech organization faced penalties under vague university policies targeting "offensive" speech. *Id.* The Court found the members showed the requisite level of intent to engage in targeted speech by alleging merely that they "*want[ed]* to engage in open and robust intellectual debate with [their] fellow students" and "speak passionately" about controversial topics. *Id.* at 331 (emphasis added).

In direct conflict with this holding, the Panel here found Appellants did not demonstrate a sufficient intention because "one's desire *to be able to take* an action does not equate to one's intent to *actually take* such an action." Dkt. 103, at 11. For this reason alone, the Panel found Appellants did not meet the other *Speech First* factors either. *Id.* at 12. But the *Speech First* plaintiffs also did not point to any specific instance of a future intention to speak, let alone any that would be targeted by the policy with any certainty. *See Speech First*, 979 F.3d at 331. *See also Inst. for Free Speech v. Johnson,* No. 24-50712, slip op. at 13 (5th Cir. filed July 28, 2025) (First Amendment plaintiff had standing where it was "only

14

one step removed from unlawful conduct, which our caselaw does not require it to take"). The contention of the *Speech First* plaintiffs, in fact, was precisely that of Appellants: they merely "want[ed] to engage in… debate" in the future. 797 F.3d at 335. The Panel Decision created a conflict by diverging from this standard.

Furthermore, this Court in *Speech First* held that "when dealing with pre-enforcement challenges to… non-moribund [rules] that facially restrict expressive activity by class to which the plaintiff belongs, courts will assume a credible threat of prosecution absent *compelling* contrary evidence." *Id.* at 334-35 (emphasis added). By contrast, the Panel merely found there was "no evidence [Appellants] intend to engage in conduct for which they may be threatened with prosecution." Dkt. 103, at 12. It made no attempt to engage with any "compelling contrary evidence," of which there was, and is, none.

Here, Appellants alleged their desire to be able to engage in the targeted speech in the same manner as the *Speech First* plaintiffs. *See* ROA.16; *Speech First*, 979 F.3d at 331. Failing to allege sufficient "intent to *actually*" engage in that speech does not constitute "compelling contrary evidence." *Compare* Dkt. 103, at 11 *with Speech First*, 979 F.3d

at 331. Indeed, as discussed above, Appellants here introduced evidence that they have engaged, in the past, in precisely the kind of speech prohibited under the Memorandum. ROA.16. Further, compelling evidence of prosecution exists in the form of the multiple prosecutions under the Memorandum that have already taken place. *See* Dkt. 42, at 6-8. The Panel's reasoning therefore conflicts with the prior panel decision in *Speech First*. Indeed, the Panel's reasoning seems to eliminate chilling claims as viable First Amendment claims altogether. If the Panel Decision is good law, then it is not clear how a chilling claim could *ever* be plead successfully.

## II.    The Circuit should rehear the Panel's decision en banc because it involves an issue of exceptional importance.

The Panel's conflicts with prior panel decisions of this Court involve an issue of "exceptional importance," namely the threshold issue of whether a party has *any* ability to seek judicial review of government action impacting their lives, businesses, and livelihoods. *See* F.R.A.P. 40(2)(D). As this Court has long recognized, the ability to get into court is of critical importance to every plaintiff. That is why the Court found "exceptional importance" where a panel granted summary judgment on qualified immunity, in anticipation that the plaintiff might

have had a Fourth Amendment claim. *See Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017). Similarly, it found "exceptional importance" in whether the parents of a boy shot and killed by a border-patrol agent might have a cause of action to raise Fifth Amendment grievances on behalf of their son. *See Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018). It has also found "exceptional importance" in whether a defendant's Fourteenth Amendment *Brady* rights might be implicated by the withholding of evidence during plea negotiations. *See Alvarez v. City of Brownsville*, 874 F.3d 898 (5th Cir. 2017).

This case involves a similarly fundamental but even broader constitutional issue: Article III standing, the importance of which is heightened in the First Amendment context. It presents "the need for en banc resolution, not just of the ultimate 'who wins?' question, but of the prefatory 'which test?' question." *Mance v. Sessions*, 896 F.3d 390, 397 (5th Cir. 2018) (Willett, J., dissenting). Without clarification regarding the proper test for whether someone is sufficiently regulated to come to court, individuals and businesses will be left "objects of the Regulation" without recourse against the "increased regulatory burdens" they face. *Contender Farms*, 779 F.3d at 265-66. This is especially true in the

17

speech-chilling context, where even potential threats do constitutional harm.

## CONCLUSION

For the foregoing reasons, this Court should rehear this case en banc.

Dated: August 1, 2025                 Respectfully submitted,

*/s/ Matthew Miller*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
MATTHEW MILLER
TX Bar No. 24046444
mmiller@texaspolicy.com
CLAYTON WAY CALVIN
TX Bar No. 24132780
ccalvin@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:(512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on August 1, 2025, I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Matthew Miller
MATTHEW MILLER

## CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitation of F.R.A.P. 40(d)(3) because this brief contains 3,669 words, excluding the parts of the brief exempted by F.R.A.P. 32(f).

2.     This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type-style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in Century Schoolbook font, a proportionally spaced typeface using Microsoft Word, in 14-point font size.

/s/ Matthew Miller
MATTHEW MILLER

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2025

Lyle W. Cayce
Clerk

No. 23-40629

Burnett Specialists; Staff Force, *doing business as* Staff
Force Personnel Services; Allegiance Staffing
Corporation; Link Staffing; LeadingEdge Personnel,
Limited,

*Plaintiffs—Appellants,*

*versus*

William B. Cowen, *Acting General Counsel of the National Labor
Relations Board, in her official capacity*; United States of America;
National Labor Relations Board,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-605

Before Higginbotham, Stewart, and Haynes, *Circuit Judges.*

Patrick E. Higginbotham, *Circuit Judge*:

This appeal arises out of Memorandum GC 22-04, titled "The Right to Refrain from Captive Audience and other Mandatory Meetings," issued by the former General Counsel of the NLRB, Jennifer Abruzzo.

## I.

We begin with the basics. Section 7 of the National Labor Relations Act ("NLRA") creates a statutory right for employees to "self-organiz[e], to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection"[1] and the right "to refrain from any or all of such activities"[2] except when "such a right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."[3] Section 8 outlines employer actions constituting "unfair labor practices."[4]

The NLRB is tasked with policing labor practices affecting commerce,[5] a task delegated to the General Counsel as the prosecutor and to the NLRB itself as the adjudicator of complaints of unfair labor practices.[6] When a private party files a "charge" alleging an unfair labor practice, the General Counsel decides whether a "complaint" should issue.[7] Neither the General Counsel nor the Board have authority to investigate absent the filing

---

[1] 29 U.S.C. § 157.

[2] *Id.*

[3] *Id.*

[4] *Id.* at § 158(a).

[5] *Id.* at § 160.

[6] *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 444 (5th Cir. 2022) (citing *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 124 (1987)).

[7] *Kent Corp. v. NLRB*, 530 F.2d 612, 615 (5th Cir. 1976).

of a charge.[8] Only the General Counsel may file a complaint, and its decision is unreviewable.[9] On the filing of a complaint, the Board may then—and only then—adjudicate the proceeding and "'[a]ny person aggrieved by a final order of the Board' may petition for review in the appropriate federal appellate court."[10]

## II.

Charged with these responsibilities, General Counsel Abruzzo issued a keystone Memorandum on April 7, 2022 outlining her plan to urge the NLRB to reverse its holding in *Babcock*[11] that an employer does not violate the NLRA when it compels its employees to attend a meeting in which it urges employees to reject union representation, and that Abruzzo "will" urge the NLRB to hold that, in two circumstances, employees "will understand their presence and attention to employer speech concerning their exercise of Section 7 rights to be required: when employees are (1) forced to convene on paid time or (2) cornered by management while performing their job duties."

Abruzzo clarified the meaning of this sentence in a brief in *Cemex Construction Material Pacific, LLC*.[12] There, Abruzzo argued that if an

---

[8] 29 U.S.C. § 160(b); *Precision Concrete v. NLRB*, 334 F.3d 88, 91 (D.C. Cir. 2003) ("The Board . . . acting through the General Counsel . . . may not initiate a charge on its own; it may prosecute only conduct about which someone else has filed a charge.").

[9] *N.L.R.B. v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 113 (1987).

[10] *Kent Corp.*, 530 F.2d at 615; *United Nat. Foods* 66 F.4th at 540 (citing *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1119 (5th Cir. 1974) (quoting 29 U.S.C. § 160(f)). The appropriate federal appellate court includes where such a person "resides or transacts business." 29 U.S.C. § 160(f).

[11] *Babcock & Wilcox Co.*, 77 N.L.R.B. 577 (1948).

[12] *See* 372 N.L.R.B. 157 (2023).

employer convenes employees for a Section 7 meeting on paid time, they must tell employees: (1) the purpose of the meeting; (2) that if an employee attends, they are free to leave at any time; (3) that attendance is voluntary; (4) that nonattendance will not result in reprisals; and (5) that attendance will not result in benefits. And the meeting "must occur in a context free from employer hostility to the exercise of Section 7 rights." If an employer announces a meeting in advance, "it must reiterate the explanation and assurances set forth above at the start of the meeting."

Abruzzo also argued in that briefing that if an employer corners an employee to address them concerning their exercise of Section 7 rights, the employer must tell the employee: (1) the purpose of the encounter; (2) that participation is voluntary; (3) that nonparticipation will not result in reprisals; (4) that participation will not result in rewards or benefits; and (5) that the employee may end the encounter at any time without loss of pay by leaving or by asking the employer to stop. The encounter must also occur in a context free from employer hostility to the exercise of Section 7 rights and, if the encounter takes place at the employee's work area, the employer must also obtain affirmative consent from the employee in order to talk to the employee.

The Memorandum, read together with Abruzzo's briefing in *Cemex*, does not advocate for a complete prohibition of any speech by an employer; it rather maintains that the NLRB should mandate speech in certain instances: when an employer is to discuss a topic implicating an employee's Section 7 rights by forcing employees to convene on paid time or cornering an employee while the employee is performing job duties.

After oral argument in this case, the NRLB expressly overruled *Babcock*. In *Amazon.com Services LLC*, the NLRB held that an employer violates the NLRA if it "requires employees to attend a meeting at which the

employer expresses its views on unionization."[13] If an employer is to hold such a meeting, it must inform employees in advance of the meeting that:

> 1. The employer intends to express its views on unionization at a meeting at which attendance is voluntary;

> 2. Employees will not be subject to discipline, discharge, or other adverse consequences for failing to attend the meeting or for leaving the meeting; and

> 3. The employer will not keep records of which employees attend, fail to attend, or leave the meeting.[14]

The NLRB will find that an employer compelled attendance at a meeting if, under all the circumstances:

> employees could reasonably conclude that attendance at the meeting is required as part of their job duties or could reasonably conclude that their failure to attend or remain at the meeting could subject them to discharge, discipline, or any other adverse consequences.[15]

The NLRB provided two examples of compelled meeting attendance: attendance mandated by an express order from an agent of the employer or attendance at a meeting that is included on employees' work schedules, as communicated by an agent of the employer.[16]

### III.

Staffing companies operating in Texas, filed this suit alleging that the Memorandum announced that Abruzzo would take action to enforce a new

---

[13] 373 N.L.R.B. No. 136 at 19 (Nov. 13, 2024).

[14] *Id.*

[15] *Id.* at 20.

[16] *Id.*

interpretation of the NLRA and that the new interpretation itself "prohibits employers from speaking to employees about unionization." The Staffing Companies assert that the new interpretation "directly restricts employer speech on the basis of its content, viewpoint, and speaker," a denial of their speech protected by the First Amendment. The Staffing Companies further argue that the Memorandum and Abruzzo's application of the principles espoused by the Memorandum against other employers have a substantial "chilling effect" on the Staffing Companies' speech, denied their First Amendment rights to express themselves on the merits of unionization, and that the Memorandum itself "discriminates on the basis of viewpoint, speaker, and content—employers may talk about safety and job training but not about unions." Finally, the Staffing Companies assert that the Memorandum is overbroad and vague because "it sweeps in non-coercive, non-threatening speech with illegal speech and fails to give meaningful guidance as to what constitutes 'cornered' employees."

The Staffing Companies seek a preliminary and permanent injunction against federal officials acting in their official capacities enforcing the Memorandum's guidance, as well as a declaratory judgment that the guidance is unconstitutional. The NLRB and Abruzzo moved to dismiss the complaint for lack of jurisdiction, joined by the United States. The district court granted the motion, holding that it lacked jurisdiction for three reasons: (1) the Plaintiffs challenged the NLRB General Counsel's prosecutorial decisions, which are made unreviewable by the NLRA; (2) the NLRA's scheme of reviewing unfair labor practices precludes jurisdiction; and (3) the Plaintiffs lack standing.

The Staffing Companies appeal, arguing that the district court wrongly dismissed their complaint, that the NLRA does not preclude appellate review, that they have standing "for the simple reason that the Memorandum announces a rule that applies to them," and is a final agency

No. 23-40629

action reviewable under the APA, and that—even if the Memorandum does not constitute an agency action—it is reviewable as a *Larson/ultra vires* claim.

While the NLRB has now overruled Babcock, the NRLB's decision does not fully adopt Abruzzo's position on meetings compelled by employers and it does not discuss cornered employees. Importantly, Abruzzo's briefing here asserts that, pursuant to the Memorandum, complaints will not issue when employers hold captive-audience meetings if there are no other alleged violations of current law,[17] and that every case cited by Plaintiffs where captive-audience complaints have issued involved other, independent violations of the NLRA.[18]

Following the 2024 presidential election, President Trump removed Abruzzo from her position as General Counsel and William Cowen became the Acting General Counsel of the NLRB. Cowen notified the court of the automatic substitution of Abruzzo for Cowen and then filed a "Notice of Case Development and Suggestion of Mootness," alerting this court to Cowen's rescission of the Memorandum. According to Cowen, the Memorandum now has no effect and the remedy sought in the complaint would not provide relief to the Plaintiffs. For that reason, Cowen believes that this case is moot and the district court's dismissal of the case should be affirmed. The Staffing Companies disagree.

---

[17] Red Brief at 54, n.15 ("Appellants will not face an administrative complaint even if they hold a captive-audience meeting, so long as they do not commit another established violation of the Act. Each of the cases cited by Appellants where captive-audience complaints have issued involved other, independent violations of the Act.").

[18] *See also* Red Brief at 54, n.15 ("Appellants will not face an administrative complaint even if they hold a captive-audience meeting, so long as they do not commit another established violation of the Act. Each of the cases cited by Appellants where captive-audience complaints have issued involved other, independent violations of the Act.").

No. 23-40629

## IV.

We review *de novo* rulings on motions to dismiss for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), including motions to dismiss for lack of standing.[19] When ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[20] The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to a plaintiff.[21] When a defendant moves to dismiss under Rule 12(b)(1) challenging jurisdiction, the party invoking jurisdiction has the burden to establish subject-matter jurisdiction.[22] Here, the Staffing Companies bear the burden of demonstrating their standing.[23] At the pleading stage, the burden is "to allege a plausible set of facts establishing jurisdiction."[24]

## V.

"Under the Constitution, one element of Article III's 'Cases' and 'Controversies' requirement is that a plaintiff must establish standing to

---

[19] *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 (5th Cir. 2019), as revised (June 6, 2019) ("The standard of review for a dismissal pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) is de novo.").

[20] *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001).

[21] *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

[22] *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

[23] *E.T. v. Paxton*, 41 F.4th 709, 718 at n.2 (5th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021)).

[24] *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

sue."[25] It has these elements: (1) injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained of" and (3) "a likelihood that the injury will be redressed by a favorable decision."[26]

While the Staffing Companies have not provided evidence of enforcement of the Memorandum causing them direct injury, they may establish injury in fact when a credible threat of a policy's enforcement chills their speech or causes self-censorship,[27] a threat that is "certainly impending" and not an "attenuated chain of possibilities" partially based on "the decisions of independent actors."[28]

## A.

While a credible threat of enforcement may be assumed absent compelling contrary evidence when a statute facially restricts expressive speech,[29] we cannot make that assumption here in the face of "compelling contrary evidence" that there is no credible threat of enforcement of the policies espoused in the Memorandum.

As the Staffing Companies admitted—there is no known unionization attempt, and there is no reason to believe that the Staffing Companies currently wish to hold meetings with employees on paid time to discuss unionization, much less that they currently want to do so in a manner that

---

[25] *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013)).

[26] *Id.* (cleaned up) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

[27] *Texas State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022) (citation omitted), *cert. denied sub nom. Texas State LULAC v. Torres*, 144 S. Ct. 70 (2023).

[28] *Glass*, 900 F.3d at 239 (quoting *Clapper*, 568 U.S. at 410-14).

[29] *Elfant*, 52 F.4th at 257 (5th Cir. 2022); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), as revised (Oct. 30, 2020).

might lead the NLRB General Counsel to bring a complaint against the Staffing Companies.

Nor do Plaintiffs' declarations support any intent to engage in conduct that the General Counsel may want to prosecute pursuant to the Memorandum. Those declarations merely state the abstract: "I would like to be able to discuss the merits of unionization with my employees on paid time without fear of facing unfair labor practices charges." The Staffing Companies' complaint likewise fails to establish intent to engage in conduct that the General Counsel may seek to prosecute, alleging only that the Staffing Companies "would" hold meetings with employees on paid time to discuss unionization "if" there is a unionization attempt. This conditional statement fails to support a current credible threat of enforcement against the Staffing Companies.

There is no evidence in the record to show that the Staffing Companies today actually intend to engage in any conduct arguably affected with a constitutional interest. The Staffing Companies assert in their Reply Brief that they do intend to engage in regulated speech. But nothing in the record supports that contention and the Staffing Companies complaint never moves beyond, we may someday. Relatedly, we have been unwilling to assume a credible threat of future enforcement when that future enforcement is dependent upon decisions of third parties, who might one day proceed.[30] Here, future enforcement would depend upon a third party (an employee) filing an unfair labor practice charge enabling the General Counsel to file a

---

[30] *Elfant*, 52 F.4th at 257 at n.6 (5th Cir. 2022) (finding that the presumption of credible threat does not apply given "the number of stars that would have to align before Plaintiffs could be prosecuted," including third party action); *see also Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (stating that the risk of prosecution "is speculative and depends in large part on the actions of third-party donors").

complaint pursuant to *Amazon.com Services LLC* or the Memorandum.[31]

As there is here little non-speculative evidence of a credible threat of enforcement against the Staffing Companies and because future enforcement is dependent upon the uncertain actions of third parties, this Court cannot here *assume* a credible threat of enforcement in this case.

**B.**

This said, we may nevertheless find a credible threat of enforcement that chills speech when the plaintiff can show each the following: (1) that they "intend[] to engage in a course of conduct arguably affected with a constitutional interest"; (2) that their conduct is "arguably regulated" by the challenged policy; and (3) that "the threat of future enforcement is substantial."[32] There is no record evidence that the Staffing Companies intend to engage in a course of conduct arguably affected with a constitutional interest. Thus, the Staffing Companies cannot satisfy the first prong of the chilled speech analysis. The Staffing Companies argue that because they "have discussed unionization in the past and would like to do so in the future while employees are on paid time," they have demonstrated their intent to engage in conduct regulated by the Memorandum. But one's desire *to be able to take* an action does not equate to one's intent to *actually take* such an action. And there is no known impending unionization effort at the Staffing Companies' businesses that would lead the Staffing Companies to engage in conduct regulated by the Memorandum. The Staffing Companies have not cited to or provided any evidence that they actually intend to engage in this

---

[31] *See* 373 N.L.R.B. No. 136 at 19 (Nov. 13, 2024).

[32] *Elfant*, 52 F.4th at 256 (citation omitted); *Speech First, Inc.*, 979 F.3d at 332, as revised (Oct. 30, 2020) (holding that speech need not be "arguably proscribed" to satisfy this second requirement as long as the speech is at least "arguably regulated").

conduct in the future and, therefore, have not alleged a plausible set of facts establishing that they can meet the first requirement to prove chilled speech.

Turning to the second element, it is not surprising that the Staffing Companies also failed to meet their burden of sufficiently alleging that their conduct is arguably regulated by the General Counsel. Again, the Staffing Companies did not provide evidence of plans to engage in conduct that would be affected by the General Counsel's future enforcement of the policies espoused in the Memorandum, the NLRB's decision in *Amazon.com Services LLC*, or any other document. Without intent to engage in speech that Abruzzo sought to regulate, the Staffing Companies cannot meet their burden of proving that their conduct is or will be arguably regulated by the General Counsel or that they will otherwise suffer injury.

Third, the Staffing Companies cannot prove that a threat of future enforcement is substantial. And while enforcement includes threatened civil prosecution,[33] there is no evidence that the Staffing Companies intend to engage in conduct for which they may be threatened with prosecution.

A plaintiff can meet the injury in fact requirement of standing if they can demonstrate satisfaction of each prong of the chilled speech analysis. But the Staffing Companies cannot meet their burden of proving that they satisfy any of those prongs. The Staffing Companies have not otherwise demonstrated that there is a "certainly impending" or "substantial risk" of future injury.

Staffing Companies argue that they have standing to bring this suit based on this circuit's 2015 opinion in *Contender Farms*.[34] There, the

---

[33] *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024).

[34] *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

plaintiffs were buyers, sellers, and exhibitors of horses who were inspected by Horse Industry Organizations.[35] The United States Department of Agriculture adopted a final rule requiring that certain horse organizations adopt penalties, including suspension, for soring violations.[36] Those suspensions "target[ed] participants in Tennessee walking horse events" including those showing the horse, exhibiting the horse, entering or allowing the entry of a horse in a show or exhibition, selling the horse, auctioning the horse, or offering the horse for sale or auction. The plaintiffs in that case "suggest[ed] that they could neither earn a living nor compete recreationally without participating in [shows affiliated with Horse Industry Organizations]" and challenged the USDA rule.[37]

This court held that "[i]f plaintiff is an object of a regulation, 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'"[38] But that does not apply "when the plaintiff is not himself the object of the government action or inaction he challenges."[39] "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense."[40] In *Contender Farms*, the plaintiffs were the object of the regulation "because they participate[d] in the type of events that the Regulation [sought] to regulate, *i.e.*, the major Tennessee walking horse events."[41]

---

[35] *Id.* at 262.

[36] *Id.* at 263.

[37] *Id.* at 265.

[38] *Id.* at 264 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)).

[39] *Id.* (quoting *Lujan*, 504 U.S. at 561-62).

[40] *Id.* at 265.

[41] *Id.* at 266.

Here, the Staffing Companies are not currently the "object of the governmental action . . . [they] challenge[]" and it is not sufficiently likely that the Staffing Companies ever will be the object of that action given that there is no evidence that they intend to take any action arguably regulated by the Memorandum or the NLRB's decision in *Amazon.com Services LLC*. *Contender Farms* does not support standing.

In a letter filed pursuant to Federal Rules of Appellate Procedure 28(j), Staffing Companies argue that this Court's recent opinion in *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.* expanded the holding in *Contender Farms* by finding that plaintiff healthcare providers had standing when they were subject to a regulatory scheme wherein arbitrators were unlawfully deprived of their statutory discretion: "the fact that the Plaintiffs are now subject to regulations that are contrary to law is itself a concrete injury sufficient to give them standing."[42]

Like *Contender Farms*, *Texas Med. Ass'n* does not offer comfort to the Staffing Companies because they have not sufficiently alleged the intent needed to engage in the regulated conduct as in the Tennessee walking horse events.

## VI.

Because the complaint should be dismissed due to the Staffing Companies lack of standing, we need not address the parties' arguments on mootness.[43]

---

[42] 110 F.4th 762, 773 (5th Cir. 2024).

[43] *See Daves v. Dallas Cnty.*, 64 F.4th 616, 623 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548, 217 L. Ed. 2d 292 (2024) (noting that ""[d]espite the possibility of mootness, . . . a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits." (quoting *Sinochem Int'l v. Malaysia Int'l Shipping*, 549 U.S. 422, 430–31 (2007))); *K.P. v. LeBlanc*, 729 F.3d 427, 437 (5th Cir. 2013) (addressing standing before

No. 23-40629

## VII.

The district court dismissed this case for lack of standing. We agree and AFFIRM.

---

mootness). *See also Shields L. Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1285 n. 32 (10th Cir. 2024) ("[B]ecause we conclude that the Objecting Firms lack standing, we need not decide whether their challenges to the January 2021 Settlement Order are, in fact, moot.").

No. 23-40629

Haynes, *Circuit Judge*, dissenting in part; concurring in part:

I conclude that, given the significant events that have occurred since the oral argument, we should remand this case to the district court to determine in the first instance if this case is now moot. If the case is moot, that ends the matter. If it is not moot, then I agree with the majority opinion that the district court correctly determined that it lacked jurisdiction, but I would not reach the standing issue. Instead, I would make that decision on the lack of jurisdiction over the claims as stated by the district court at pages six through eighteen of its opinion.